ROBERT E. WISDOM, Plaintiff-Appellee, v. STONEWALL INSURANCE
COMPANY, Defendant-Appellant.

Fifth District    No. 5—85—0294

Opinion filed January 10, 1986.

John H. Marshall, of Burns, Marshall & Burns, of St. Louis, Missouri, for
appellant.

Brad L. Badgley, of Heiligenstein & Badgley, P.C., of Belleville, and Far-
rell & Ballmen, of St. Louis, Missouri, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this case is whether an automobile liability insurance
policy issued by defendant to an Illinois resident in the State of Illi-
nois covering an automobile registered in Illinois is subject to the cov-
erage limits for bodily injury established by the Missouri Motor Vehi-

cle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 *et seq.* (1978)), where defendant's insured was involved in a car accident in Missouri causing injury to a Missouri resident. Plaintiff, the injured Missouri resident, sought a declaratory judgment that the Missouri statutory limits were applicable to the subject policy and operated to increase defendant's coverage for bodily injury to $25,000 per person per occurrence from the limit of $15,000 per person per occurrence otherwise provided by the terms of the policy. Following a bench trial, the circuit court of St. Clair County entered judgment for plaintiff, holding the higher statutory coverage to be so applicable. Defendant now appeals. We reverse.

The pertinent facts are not in dispute. Defendant, Stonewall Insurance Company, issued an automobile liability policy to John Moorland for a 1979 Ford Mustang. Moorland was a resident of Cahokia, Illinois, and the Ford Mustang was registered in the State of Illinois. The insurance policy on the car was issued to Moorland in Illinois and provided $15,000 maximum bodily injury coverage per person per occurrence. The policy also contained the following endorsements:

| | |
|---|---|
| "CONFORMITY WITH FINANCIAL RESPONSIBILITY LAWS | When we certify this policy as proof under any financial responsibility law, it will comply with the law to the extent of the coverage required by law. |
| OUT OF STATE INSURANCE | If an insured person becomes subject to the financial responsibility law or the compulsory insurance law or similar laws of another state because of the ownership, maintenance or use of your insured car in that state, we will interpret this to provide any broader coverage required policy by those laws *** " |

During the policy period the Ford Mustang, operated by John Moorland, was involved in a collision with a truck owned and operated by plaintiff, Robert Wisdom, a Missouri resident. The collision took place on a public highway in Iron County, Missouri. Plaintiff sustained bodily injury. Moorland was killed. Thereafter, plaintiff brought an action in Federal district court to recover damages for his injuries, alleging negligence by Moorland. Defendant, Stonewall Insurance Company, offered to pay plaintiff $15,000, the maximum bodily injury limit specified in Moorland's policy. Plaintiff rejected the offer and thereupon filed his complaint for a declaratory judg-

ment that the maximum amount of bodily injury liability coverage under the subject policy was governed by the terms of Missouri's Motor Vehicle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 et seq. (1978)). In its final judgment for plaintiff, the circuit court ruled:

"It is ordered that sec. 303 V.A.M.S. and the 'Out of State Insurance' and 'Conformity with Financial Responsibility Laws' sections of the subject policy require a finding that said policy affords the plaintiff $25,000 coverage for bodily injury to one person per occurrence ***."

On this appeal, defendant contends that the circuit court erred in construing the subject policy and in applying the requirements of Missouri's Motor Vehicle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 et seq. (1978)) to it. We agree.

■ ■ The principles involved in the construction of insurance policies are the same as those involved in construing other contracts. The contracts must be interpreted according to the sense and meaning of the terms which the parties use. (Automobile Underwriters, Inc. v. Hardware Mutual Casualty Co. (1970), 120 Ill. App. 2d 159, 166, 256 N.E.2d 463, 466.) Where the terms of an insurance policy are clear and unambiguous, the court must give effect to the intent of the parties to the contract in accordance with the clear expression of agreement. (McCann v. Continental Casualty Co. (1956), 8 Ill. 2d 476, 482, 134 N.E.2d 302.) In this case, the clear language of the policy endorsements quoted above evinces an intent to provide coverage broader than that specified in the policy itself, i.e., $15,000 bodily injury liability per person per occurrence, only where, and to the extent, State law applicable to the policy requires that such broader coverage be provided.

The theory of plaintiff's case is that the Missouri Motor Vehicle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 et seq. (1978)), requires all nonresident motorists driving in Missouri to maintain insurance providing bodily injury liability coverage of not less than $25,000 per person per occurrence. Because Moorland, a nonresident, was driving in Missouri when the accident took place, plaintiff reasons that Missouri's statutory coverage requirements are applicable and must therefore be read into the Moorland policy through the aforementioned endorsements. Analysis of the Missouri Motor Vehicle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 et seq. (1978)) reveals this contention to be untenable.

To determine the proper construction of a Missouri statute, we must look to Missouri case law. (See In re Estate of Jensik (1962),

34 Ill. App. 2d 130, 139, 180 N.E.2d 740.) As Justice Thompson held over 60 years ago, "The courts of Illinois are committed to the doctrine of accepting the decisions of courts of a foreign state in construing and applying the statutes of such foreign states." (*Wilkinson v. Cosmopolitan Life Insurance Association* (1910), 154 Ill. App. 195, 199.) Missouri case law establishes that mandatory insurance coverage is not the public policy of that State and that one may therefore lawfully own or operate an automobile in Missouri without having first secured automobile liability insurance. (*Harrison v. MFA Insurance Co.* (Mo. 1980), 607 S.W.2d 137, 143 (*en banc*).) Missouri's Motor Vehicle Safety Responsibility law (Mo. Rev. Stat. sec. 303.010 *et seq.* (1978)) creates no exception to this rule. Contrary to plaintiff's assertion, the statute imposes no requirement that owners or operators of motor vehicles carry any liability insurance in any amount. (*Gabler v. Continental Casualty Co.* (Mo. App. 1956), 295 S.W.2d 194, 196.) Under the statute, procurement of liability insurance is voluntary, not compulsory. *Perkins v. Perkins* (Mo. App. 1955), 284 S.W.2d 603, 609.

A critical feature of the statute, which plaintiff fails to comprehend, is that its provisions come into play, if at all, only *after* occurrence of a motor vehicle accident in Missouri. (See Mo. Rev. Stat. sec. 303.030.1 (Cum. Supp. 1984).) Following such an accident, the license of each operator, the registration of each owner, and, in the case of nonresidents, the operating privileges of each owner and operator, of a vehicle involved in the accident are subject to suspension unless "security" is deposited with the Director of Revenue (Mo. Rev. Stat. sec. 303.030.2 (Cum. Supp. 1984)) in order to provide a source for payment of any judgment against the owner or operator arising out of that accident. (Mo. Rev. Stat. sec. 303.060 (1978).) Moreover, where an owner or operator has had his license, registration or operating privileges suspended or revoked by the Director of Revenue for a conviction or forfeiture of bail (Mo. Rev. Stat. sec. 303.150 (1978)) or because of an outstanding judgment arising from a damage action involving a motor vehicle accident (Mo. Rev. Stat. secs. 303.100, 303.110, 303.130 (1978)) and wishes to have them restored, the owner or operator must submit to the Director of Revenue proof of ability to respond in damages for liability on account of accidents which may occur in the future, *i.e.*, "proof of financial responsibility" (Mo. Rev. Stat. sec. 303.020 (10) (Cum. Supp. 1984)). Proof of financial responsibility is not mandatory, but the license, registration or operating privileges of such an owner or operator cannot be restored unless and until proof of financial responsibility is

given. Mo. Rev. Stat. sec. 303.110 (1978).

An owner or operator may avoid suspension of his license, registration or operating privileges under the "security" requirements and may provide the necessary "proof of financial responsibility" through a variety of means. One available option is through motor vehicle liability insurance. (Mo. Rev. Stat. secs. 303.030.4(1) (Cum. Supp. 1984), 303.170 (1978), 303.180 (1978).) The only motor vehicle liability policies acceptable under the statute, however, are those which have been properly certified in writing to the Director of Revenue. Mo. Rev. Stat. sec. 303.190 (Cum. Supp. 1984); *Perkins v. Perkins* (Mo. App. 1955), 284 S.W.2d 603, 609-10.

Missouri's Motor Vehicle Safety Responsibility Law specifies that such motor vehicle liability policies must meet certain requirements, among which is that they provide bodily injury liability coverage of $25,000 per person per accident. (Mo. Rev. Stat. secs. 303.030.5, 303.190.2(2) (Cum Supp. 1984).) These requirements do not apply to all automobile policies an owner or operator may have, but only those certified in accordance with the statute. (*Gabler v. Continental Casualty Co.* (Mo. App. 1956), 295 S.W.2d 194, 197; *State Farm Mutual Automobile Insurance Co. v. Ward* (Mo. 1960), 340 S.W.2d 635, 638.) That is, they take effect only where an owner or operator faced with suspension or revocation of his license, registration or operating privileges after an accident opts to comply with the "security" and "proof of financial responsibility" provisions of the statute by having an insurance policy on the motor vehicle in question certified to the Director of Revenue. (*Perkins v. Perkins* (Mo. App. 1955), 284 S.W.2d 603, 609-10.) It is only the actual certification of a policy which operates to invoke the statute's requirements. *American Standard Insurance Co. v. Rider* (Mo. App. 1971), 475 S.W.2d 418, 425.

■ In this case, Moorland, defendant's insured, did not need to deposit "security" or provide "proof of financial responsibility" in order to avoid suspension or revocation of his operating privileges in Missouri after the accident for the obvious reason that he was dead. Because Moorland was a nonresident and the car he was driving was not registered in Missouri, the additional sanctions regarding license and registration could not be invoked against him in any event. Not surprisingly, therefore, the record contains no proof that the policy issued by defendant to Moorland was ever certified to the Director of Revenue in connection with this accident. Nor is there any evidence that the policy had been so certified because of some previous accident. As plaintiff's counsel conceded at oral argument, the issue

of certification was not even addressed at trial. Accordingly, we conclude that Missouri's Motor Vehicle Safety Responsibility Law (Mo. Rev. Stat. sec. 303.010 *et seq.* (1978)) is inapplicable to Moorland's policy and does not require defendant to provide the statutory coverage limit of $25,000 per person per occurrence under the policy endorsements invoked by plaintiff. Defendant's liability under the policy is, instead, restricted to the amounts specified in the contractual agreement which defendant and Moorland voluntarily executed prior to the accident.

Plaintiff resists this analysis by citing *California Casualty Indemnity Exchange v. Deardorff* (1984), 157 Cal. App. 3d 548, 203 Cal. Rptr. 725, but that case is inapposite. *Deardorff* applied the law of Minnesota, not Missouri, and involved a "no-fault" automobile insurance statute containing mandatory coverage provisions. Missouri is not a "no-fault" State and, as we have noted, does not make automobile liability insurance mandatory. (*Harrison v. MFA Mutual Insurance Co.* (Mo. 1978), 607 S.W.2d 137, 143 (*en banc*).) Plaintiff cites no further authority in support of his position. Our independent research has disclosed that virtually every other court to consider policy endorsements and statutory requirements under financial responsibility laws comparable to those at issue here has adopted the reasoning we have followed in reaching our disposition today. See, *e.g., Perry v. State Farm Mutual Automobile Insurance Co.* (S.D. Miss. 1985), 606 F. Supp. 270, 271-72; *Grimes v. Government Employees Insurance Co.* (Ind. App. 1980), 402 N.E.2d 50; *American Hardware Mutual Insurance Co. v. Bradley* (1977), 153 N.J. Super. 72, 379 A.2d 53; *Galford v. Nicholas* (1961), 224 Md. 275, 167 A.2d 783; *McCann v. Continental Casualty Co.* (1956), 8 Ill. 2d 476, 134 N.E.2d 302.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed.

Reversed.

WELCH and KARNS, JJ., concur.